# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JAMIE K.S. ESPRECION,

    Plaintiff,

vs.

COSTCO WHOLESALE CORP.,

    Defendant.

2:15-cv-01452-RCJ-VCF

**ORDER**

This case arises out of a slip-and-fall accident. Pending before the Court is a Motion for Summary Judgment (ECF No. 15). The Court grants the motion.

## I.  FACTS AND PROCEDURAL HISTORY

On or about October 13, 2013, Plaintiff Jamie Esprecion slipped, fell, and sustained injuries at Defendant Costco Wholesale Corp.'s property in North Las Vegas, Nevada. (Am. Compl. ¶¶ 5–10, ECF No. 1-1). Plaintiff sued Defendant for negligence in state court. Defendant removed and has moved for summary judgment.

## II.  SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court needn't consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.  Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**III.   ANALYSIS**

To make out a prima facie claim for negligence, a plaintiff must show "(1) that the defendant had a duty to exercise due care with respect to the plaintiff; (2) that the defendant breached this duty; (3) that the breach was both the actual and proximate cause of the plaintiff's injury; and (4) that the plaintiff was damaged." *Joynt v. Cal. Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992) (citing *Perez v. L.V. Med. Ctr.*, 805 P.2d 589, 590–91 (Nev. 1991)).  In Nevada, "a business owes its patrons a duty to keep the premises in a reasonably safe condition." *Sprague v. Lucky Stores, Inc.*, 849 P.2d 320, 322 (Nev. 1993) (citing *Asmussen v. New Golden Hotel Co.*,

1   392 P.2d 49 (Nev. 1964)).  If a spill causes a slip-and-fall accident and the landowner or one of
2   its agents caused the spill, it will be liable for breaching its duty to keep the premises reasonably
3   safe. *Asmussen*, 392 P.2d at 50.  "Where the foreign substance is the result of the actions of
4   persons other than the business or its employees, liability will lie only if the business had actual
5   or constructive notice of the condition and failed to remedy it." *Sprague*, 849 P.2d at 322–23.  A
6   slip-and-fall plaintiff has the burden of proving constructive knowledge. *See, e.g.*, *Morton v.
7   Wal-Mart Stores, Inc.*, 2013 WL 557309, at *4–5 (D. Nev. Feb. 12, 2013) (Du, J.) (granting
8   summary judgment to a landowner where there was no evidence any employee had caused or
9   was actually aware of the slippery substance and there was no evidence at all of how long it had
10  been present), *aff'd*, 620 Fed. Appx. 583 (9th Cir. 2015).  Accordingly, in order to avoid
11  summary judgment in a constructive notice case, a slip-and-fall plaintiff must produce some
12  evidence "that the hazard 'had existed for a period sufficient to provide the owner with
13  constructive notice.'" *Id.* at *4.
14       Defendant argues that a reasonable jury could not find it to have been negligent because
15  there is no evidence that the alleged dangerous condition (a sausage on the floor in the
16  electronics area) was caused by or actually known to any of its employees, and the only evidence
17  as to Defendant's satisfaction of its duty to periodically inspect for hazards shows that an
18  employee inspected the area one-to-four minutes before the fall and noticed no hazards.
19  Defendant has satisfied its initial burden on summary judgment to point out that there is no
20  evidence any of its employees caused the alleged hazard or was actually aware of it.  The only
21  remaining basis for liability, therefore, is constructive knowledge.
22       Plaintiff testified that she fell on a piece of sausage in the electronics section. (Esprecion
23  Dep. 22–23, ECF No. 15-1, at 45).  The incident report Plaintiff completed for Defendant
24

indicated an estimated time of 12:04 p.m. (Esprecion Member Incident Report, ECF No. 15-2, at 22). Defendant's employee Constance Dizotell testified that Defendant conducts hourly safety inspections. (Dizotell Dep. 10, ECF No. 15-1, at 20). On the date of the fall, employee Sally McNamara had conducted a safety inspection between 11:35 a.m. and 12:08 p.m. (*See* Daily Floor-walk/Safety Inspection, ECF No. 15-2, at 31). Based on McNamara's nine-year habit, Dizotell estimated that McNamara had checked the area of the fall (aisle 318) between 12:00 and 12:03 p.m. (Dizotell Dep. 85–88). Dizotell's testimony as to McNamara's acts or habits is hearsay under Rule 801(c) because Dizotell's knowledge is based purely on McNamara's out-of-court statements to Dizotell. (*See id.* 89). But McNamara herself has attested to the same facts. (*See* McNamara Decl. ¶ 9, ECF No. 17-2 ("Based on my habitual routine, I am certain that I would have inspected aisle 318 between noon and 12:03. I did not, however, observe a sausage or any other foreign object on the warehouse floor in that area.")). McNamara attests that her habit has been consistent for nine years, and that she is certain she would have noticed a sausage on the floor. (*Id.* ¶¶ 4, 10). The habit evidence is admissible under Rule 406. Defendant has therefore satisfied its initial burden as to constructive knowledge. McNamara's declaration was attached to Defendant's reply, but the Court gave Plaintiff an opportunity to submit contrary evidence via surreply, and Plaintiff has not adduced any contrary evidence with her surreply.

      The case law strongly supports Defendant's argument that one-to-four minutes is too short a time to attribute constructive knowledge of a slipping hazard to a retailer. Four minutes (the longest time period supported by the evidence) is too short to support a finding of constructive knowledge for a small hazard such as a sausage:

> If the substance is on the floor through acts of third persons, the time element to establish knowledge or notice to the proprietor is a material factor. There must be a substantial interval between the time that the substance appeared on the floor and the time of the accident. Fifteen to 20 minutes has been held to

> be a sufficient period of time to constitute constructive notice, as has at least 15 minutes, at least 20 minutes, 30 to 40 minutes, or more than an hour. ***Shorter periods of time have been held insufficient notice of a foreign substance on a store floor, such as fewer than 15 minutes, 10 or 15 minutes, 10 minutes, 5 to 10 minutes, fewer than 10 minutes, 3 to 5 minutes, no more than five minutes, fewer than five minutes, and fewer than two minutes or a few seconds to a minute before the customer's fall.*** The time necessary to show constructive notice varies with the circumstances, such as the nature of the spill. In a fall on a small penlight or AA battery on the floor, the presence of the battery on the floor for a maximum of two hours was held as a matter of law insufficient to show constructive notice.

3 Premises Liability 3d § 49:1 (2015) (collecting cases; footnotes omitted) (emphasis added).

In *Sprague*, the Nevada Supreme Court reversed a grant of summary judgment in a slip-and-fall case where the plaintiff had slipped on a grape in the produce section of a store, finding that a jury could have found that given the actual knowledge of "continual debris" in the produce section, the store may have been negligent in not taking more precautions than periodic sweeping, e.g., using "skid mats." 849 P.2d at 323. In *Sprague*, an employee testified that debris was present on the floor in the produce section 30–40 times per shift due to customers constantly handling the produce and dropping it on the floor. *Id.* at 322. The rule of *Sprague* is that a landowner with actual knowledge of a persistently reappearing hazard can be found negligent no matter how frequently he undertakes periodic remedial measures if he fails to also take remedial measures designed to avoid the reappearance of the hazard or to immediately neutralize it whenever it reappears.

The Nevada Supreme Court has limited *Sprague*, however, noting that the "mode of operation" approach to landowner liability adopted in that case had been applied "narrowly" in the other states that had adopted some version of it. *See FGA, Inc. v. Giglio*, 278 P.3d 490, 496–97 (Nev. 2012). Accordingly, the *FGA* Court rejected an expanded theory of liability under circumstances dissimilar to those in *Sprague*:

> Keeping the rationale underlying the mode of operation approach in mind, we hold that mode of operation liability does not generally extend to a sit-down restaurant such as Carmine's Little Italy. Respondent failed to show that the handling of food in a particular area by employees of Carmine's Little Italy gave rise to a foreseeable risk of a regularly occurring hazardous condition for its customers similar to the condition that caused the injury.

*Id.* at 497. As in *FGA*, there is no evidence here of a "regularly occurring hazardous condition" such that periodic hazard checks could be found to be inadequate under the traditional approach to landowner liability. Unlike slipping hazards in the produce section of a store, slipping hazards in an electronics section of a store are not expected to be (and there is no evidence that they were in this case known to be) so common that periodic checks could be said to be inadequate to keep a walkway safe.

Plaintiff notes that on the day of the fall, a vendor was handing out sausage samples "at the rear of the warehouse." The rear of the warehouse (near the meat and produce sections) appears to be approximately eight aisles away from aisle 318 where the fall occurred (roughly halfway between the front and rear of the warehouse according to the map adduced by Plaintiff). (*See* Store Map, ECF No. 16-1, at 33). Dizotell testified that Aidell's Sausages had been at Defendant's location for a roadshow from October 11–13, 2013. (Dizotell Dep. 50:8–15, ECF No. 16-1, at 39). That is enough to infer that a customer caused the dangerous condition. It is not enough to infer that the vendor caused the condition from eight aisles away, and even if it were, it would not be enough to create a genuine issue of fact as to Defendant's own liability, because a landowner is not generally liable for an independent contractor's actions. *See San Juan v. PSC Indus. Outsourcing*, 240 P.3d 1026, 1028–29 (Nev. 2010) (citing Restatement (Second) of Torts § 409 (1965)). A sausage vendor's presence is still relevant to whether Defendant satisfied its duty of care to invitees via periodic checks for hazards. *See* Restatement (Second) of Torts § 344 cmt. c. ("*Independent contractors and concessionaires.* The rule stated applies to

the acts of independent contractors and concessionaires who are employed or permitted to carry on activities upon the land.  The possessor is required to exercise reasonable care, for the protection of the public who enter, to supervise the activities of the contractor or concessionaire, including the original installation of his appliances and their operation, and his methods.").  This duty is relevant to constructive knowledge; that is, a jury could find that Defendant, having invited a sausage vendor into the store, should have conducted periodic checks more often in the area used by the vendor or even taken additional steps to protect invitees.  But as noted, the only evidence on the issue indicates that the slip occurred 1–4 minutes after McNamara's check for hazards, and in an area where continual hazards of this nature would not be expected such that additional measures might be required under *Sprague* and *FGA*.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 15) is GRANTED.

IT IS FURTHER ORDERED that the Motion in Limine (ECF No. 21) is DENIED as moot.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

Dated this 12th day of September, 2016.

_____
ROBERT C. JONES
United States District Judge